Chiao-Yun Ku & another[1] *vs.* Town of Framingham.

No. 03-P-713.

Middlesex. April 5, 2004. - October 18, 2004.

Present: Greenberg, Porada, & Green, JJ.

*Massachusetts Tort Claims Act. Municipal Corporations,* Liability for tort. *Negligence,* Independent contractor.

In an action against a town pursuant to G. L. c. 258, the Massachusetts Tort Claims Act, alleging that the town negligently supervised the manner in which an independent contractor was carrying out its duties salting roads for the town, resulting in injury to a motorist when her automobile collided with a truck owned by the independent contractor, the trial judge correctly denied the town's motion for summary judgment on the theory of immunity under G. L. c. 258, § 10(*j*) (the public duty rule), where, despite its independent contractor status, the company salting roads for the town was clearly acting within the scope of its employment and on behalf of the town [273-276]; further, the trial judge correctly denied the town's motion for summary judgment on the theory of immunity under G. L. c. 258, § 10(*b*) (the discretionary function rule), where the operation of the salt truck and the town's role in supervising its snow removal operators concerned a ministerial act of maintenance and did not involve the high degree of discretion or judgment required in policy making or planning [276-279].

Civil action commenced in the Superior Court Department on March 12, 1996.

After review by this court, 53 Mass. App. Ct. 727 (2002), the case was heard by *Raymond J. Brassard,* J., on a motion for summary judgment.

*Christopher J. Petrini* for the defendant.

*James J. O'Malley, III,* for the plaintiffs.

Greenberg, J. After the plaintiffs settled a suit against Michael L. Drake (Drake) and the Michael L. Drake Construction Company, Inc. (Drake Construction) for personal injuries

---

[1]David Cheng.

sustained during a snowstorm when a vehicle operated by plaintiff Chiao-Yun Ku collided with a salt truck operated by Drake for the town of Framingham (town), they brought suit in the Superior Court against the town under the Massachusetts Tort Claims Act (act). The town moved for summary judgment. A Superior Court judge granted summary judgment to the town on the ground of judicial estoppel based upon the plaintiffs' settlement of their prior action against Drake Construction and Drake. We reversed, ruling that judicial estoppel did not apply, and that the plaintiffs should be allowed to pursue a negligent supervision claim against the town based on Drake's conduct. See *Chiao-Yun Ku v. Framingham,* 53 Mass. App. Ct. 727 (2002) (*Chiao-Yun Ku I*). After remand, the town again moved for summary judgment on theories of immunity under G. L. c. 258, § 10(*j*), the public duty rule,[2] and G. L. c. 258, § 10(*b*), the discretionary function rule, both exemptions contained in the act. A Superior Court judge denied the summary judgment motion, ruling that the act applied because Drake was acting in the scope of his employment, but that neither exemption applied. The defendant again appeals, raising both arguments.[3] We affirm.

1. *Background.* The facts are simple and undisputed. The defendant's roads are kept clear of snow during the winter months by a combination of truck drivers employed by the defendant's department of public works and independent contractors, such as Drake. The only instructions the supervisors employed by the defendant gave to the drivers was that

---

[2]The so-called "public duty rule" began as a judicially created doctrine that protects governmental entities from liability under G. L. c. 258 unless a plaintiff can show that the duty breached was owed to the injured person himself, and not merely the public at large. In *Jean W. v. Commonwealth,* 414 Mass. 496, 499 (1993), the Supreme Judicial Court announced its intention to abolish this rule and invited the Legislature "to respond to this anticipated change by passing additional limitations on liability." The Legislature responded with an amendment of G. L. c. 258, § 10 (St. 1993, c. 495, § 57), adding "what in effect is a statutory public duty rule providing governmental immunity." *Carleton* v. *Framingham,* 418 Mass. 623, 627 (1994).

[3]An order denying a motion for summary judgment based on a claim of immunity from suit is immediately appealable under the doctrine of present execution. See *Walenty* v. *Mendon,* 55 Mass. App. Ct. 914, 914 n.2 (2002). See also *Brum* v. *Dartmouth,* 428 Mass. 684, 688 (1999); *Kent* v. *Commonwealth,* 437 Mass. 312, 316 (2002).

both sides of the roads required sand and salt treatment. The record indicates that no written directions were given to drivers concerning the performance of this task when other vehicular traffic impeded free movement of the trucks. Truck drivers sometimes drove in the middle of the road at night when they were salting two-lane roads (i.e., one lane in each direction), thereby spreading salt on both lanes at once. The defendant left to each operator whether to drive in the middle of the road. The defendant also had a policy of limiting its own employees to ten or twelve consecutive hours of operation during storms, but that policy did not apply to independent contractors. Inferentially, Michael Drake had been working over twenty-five consecutive hours at the time of the accident.

The motion judge concluded, and we agree, that the plaintiff's claim, brought pursuant to G. L. c. 258, is based upon the defendant's negligent supervision of the manner in which Drake was carrying out his duties. The defendant's disregard of these responsibilities is alleged to be the proximate cause of the plaintiff's injuries.

2. *Independent contractor status.* General Laws c. 258, § 10(*j*), inserted by St. 1993, c. 495, § 57, provides that a public employer is immune from suit for "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." The defendant claimed below, and now on appeal, that its alleged failure to prevent the accident falls squarely within the description of the type of claim barred by this exemption.

We disagree. The motion judge correctly ruled that despite his independent contractor status, "Drake was clearly acting within the scope of his employment" and "on behalf of the public employer." The question is close. To support its argument, the defendant cites *Rowe* v. *Arlington*, 28 Mass. App. Ct. 389 (1990).

In *Rowe*, the plaintiff was injured on town property as a result of work that had been negligently done by an independent contractor. After a bench trial, the trial judge concluded that

"because a private individual would be liable in such circumstances, so too was the town." *Id.* at 389-390. We reversed and held that it was "irrelevant whether a private individual under like circumstances would be liable. As the plaintiff's injury was not caused by the negligence of a public employee, the town's immunity [was] not abrogated by G. L. c. 258, § 2." *Id.* at 391. In a subsequent case, we clarified our ruling in *Rowe* by stating that "within the meaning of the Tort Claims Act, an independent contractor is not a public employee." *Thornton* v. *Commonwealth*, 28 Mass. App. Ct. 511, 513 (1990).

Both *Rowe* and *Thornton* appear to support the defendant's assertion that it has immunity because Drake was an independent contractor. However, in *Chiao-Yun Ku I*, 53 Mass. App. Ct. at 730, we suggested that the defendant could be liable for negligent supervision of an independent contractor under the theory of "retained control." We held that "the summary judgment record made out a case of joint liability, with Drake being responsible as a non-employee for negligent operation, and the town being liable for the independent negligence of its supervisory employee or employees under the theory of 'retained control.' " *Ibid.* (Citation omitted.)

The Supreme Judicial Court has held that an employer of an independent contractor may be liable for its own negligence in connection with the work done by the independent contractor. See *Corsetti* v. *Stone Co.*, 396 Mass. 1, 9 (1985). So far as the employer retains control over any part of the work, the employer is required to exercise reasonable care for the protection of others. *Id.* at 9-10. "[I]f the employer retains the right to control the work in any of its aspects, including the right to initiate and maintain safety measures and programs, he must exercise that control with reasonable care for the safety of others, and he is liable for damages caused by his failure to do so." *Id.* at 10.

The record in this case indicates that the defendant's employees supervised the salting of the roads by both independent contractors and other town employees, but drivers were never instructed on how to drive their vehicles safely. Further, the defendant's policy limited its own employees to ten or twelve consecutive hours of operation, but the defendant did not maintain a policy regarding the number of continuous hours an

independent contractor may work. These facts suggest that the defendant may be liable under the "retained control" theory. We noted that "[i]n order to establish the town's liability under this theory, the plaintiffs must demonstrate that Drake was 'not entirely free to do the work in his own way.' " *Chiao-Yun Ku I*, 53 Mass. App. Ct. at 730, quoting from *St. Germaine* v. *Pendergast*, 411 Mass. 615, 622-623 & n. 11 (1992). However, "control over the task need not descend to the last detail of method or operation for the imposition of liability to result." *Paradoa* v. *CNA Ins. Co.*, 41 Mass. App. Ct. 651, 654 (1996). Moreover, "[w]hether an employer has sufficient control over part of the work of an independent contractor to render him liable under [the 'retained control' theory] is a question of fact for the jury." *Corsetti* v. *Stone Co.*, *supra* at 11. See *Cheschi* v. *Boston Edison Co.*, 39 Mass. App. Ct. 133, 137-138 (1995). On this basis, we conclude that the motion judge was correct to deny the defendant summary judgment with respect to the public duty rule.

Next, the defendant claims that the § 10(*j*) exemption applies because negligent supervision is not an affirmative act. The Supreme Judicial Court has noted that "if a neglect of duty can be taken to 'originally cause[]' . . . a 'situation,' then the opening words of § 10(*j*), immunizing 'act[s] or failure[s] to act to prevent,' . . . would be virtually read out of the provision." *Brum* v. *Dartmouth*, 428 Mass. 684, 692-693 (1999). Further, the court has "construed the 'original cause' language to mean an affirmative act (not a failure to act) by a public employer that creates the 'condition or situation' that results in harm inflicted by a third party." *Kent* v. *Commonwealth*, 437 Mass. 312, 318 (2002). However, the motion judge correctly ruled that *Brum* and *Kent* are distinguishable from this case because in those cases the wrongdoer was a third party, whereas here the wrongdoer was acting "on behalf of the public employer." Thus, this issue turns on whether Drake, as an independent contractor, was "acting on behalf" of the defendant within the meaning of c. 258.

In *Chiao-Yun Ku I*, 53 Mass. App. Ct. at 730, we indicated that the defendant could be liable for negligent supervision under circumstances of "retained control." We held that "[t]he

evidence that town supervisors remained on the roads during snowstorms and provided the same supervision to independent contractors that they gave to town employees, that the town limited the number of hours its employees worked but placed no limits on the number of consecutive hours Drake worked, and that the town permitted operators to plow down the center of two-lane roads, raised the issue whether, if the town had sufficient control of Drake's work to create liability under the principle of retained control, it exercised that control negligently." *Ibid.* Thus, in the circumstances presented, § 10(*j*) is not a bar because the plaintiffs' injuries are alleged to have been "negligently caused" by a person acting on behalf of the public employer. We have already said that the "public duty" rule does not apply in this case because the plaintiffs' injuries were "originally caused" by a "person acting on behalf of the public employer."

3. *Discretionary function rule.* The defendant also asserts that it is shielded from liability by G. L. c. 258, § 10(*b*), as appearing in St. 1978, c. 512, § 15. This exemption from tort liability extends to functions that involve judgment, planning, or the exercise of discretion. See *Whitney* v. *Worcester*, 373 Mass. 208, 217-220 (1977); *Patrazza* v. *Commonwealth*, 398 Mass. 464, 467-470 (1986).[4]

Courts perform a two-step analysis when determining whether the discretionary function rule applies to a given case. See *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 141 (1992). The first step is to determine whether the defendant had any discretion at all as to what course of conduct to follow. *Ibid.* If the defendant had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, then the discretionary function rule does not apply. *Ibid.* As the motion judge noted in this case, "there appears to be no statute, regulation or agency practice on the salting, sanding, and plowing of roadways. Therefore, [the defendant] survives the first step of this analysis."

---

[4]"The immunities provided by [G. L. c. 258,] § 10[,] operate in the alternative; even if one immunity contains an exception that would permit a claim to be brought, that claim is barred if any of the other immunities apply." *Brum* v. *Dartmouth*, 428 Mass. at 697.

The second and more difficult step is to determine whether the discretion that the defendant had is the type of discretion for which the rule provides immunity. *Ibid.* All decisions involve some discretion, but the Supreme Judicial Court has narrowly interpreted the rule to provide "immunity only for discretionary conduct that involves policy making or planning." *Ibid.* Courts must determine whether the conduct that caused the injury has a "high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning," as opposed to conduct that consists of "the carrying out of previously established policies or plans." *Whitney* v. *Worcester, supra* at 218.

The motion judge determined that the defendant did not establish this second step in the analysis because the operation of a salt truck and the defendant's role in supervising its snow removal operators do not involve the high degree of discretion required by the cases. Compare *Wheeler* v. *Boston Hous. Authy.*, 34 Mass. App. Ct. 36, 40 (1993) (holding that "the determination of what security measures to take to protect persons on its premises from criminal activity is an integral part of the defendant's policy making and planning process"); *Tarzia* v. *Hingham*, 35 Mass. App. Ct. 506, 508-509 (1993) (holding that the defendant's decisions about whether and how to deal with the accumulation of silt and vegetation in its river and pond involved the exercise of a high degree of discretion); *Alake* v. *Boston*, 40 Mass. App. Ct. 610, 612-613 (1996) (holding that the defendant exercised a high degree of discretion in deciding how many chaperones to send on a field trip). The defendant argues that the motion judge erred in determining that the discretionary function rule does not apply to this case because the conduct giving rise to the negligent supervision claims involved unfettered discretion and policymaking.

In making this contention, the defendant focuses on its policymaking decisions. According to the defendant, its decisions not to implement policies regarding the number of hours an independent contractor could continuously operate a vehicle and whether a truck driver could operate a truck over the center line involved the sort of discretion for which the rule provides immunity from liability. The defendant asserts that these decisions

were motivated by economic considerations and that "[b]alancing the need for snow removal with the available resources and deciding how to allocate such resources involves a 'high degree of discretion and judgment.' " *Barnett* v. *Lynn,* 433 Mass. 662, 665 (2001), quoting from *Whitney* v. *Worcester,* 373 Mass. at 218 (holding that the city's decision not to remove snow from a parcel of public property because the cost outweighed the need was protected by the discretionary function rule).

However, this case is distinguishable from *Barnett* because the defendant does have a policy to plow and salt the streets after a storm and to supervise salt truck operators, including independent contractors like Drake. Thus, the negligence asserted by the plaintiffs in this case appears to concern the carrying out of established policies rather than actual policymaking and planning. See *Tryon* v. *Lowell,* 29 Mass. App. Ct. 720, 724 (1991); *Alake* v. *Boston, supra* at 614 (chaperones' negligent supervision of students involved merely the implementation of previously established policies). The motion judge determined that "plowing and salting streets after a storm is better characterized as maintenance." The Supreme Judicial Court has held that "[a]ny negligence in performing, or failing to perform, the ministerial task of maintenance does not rise to the level of 'public policy or planning' decisions warranting protection under G. L. c. 258, § 10(*b*)." *Doherty* v. *Belmont,* 396 Mass. 271, 276 (1985).

In *Doherty,* the town removed old parking meters from a public parking lot but left several parking meter stubs protruding from the median strip, one of which caused the plaintiff to trip and fall. *Id.* at 272-273. The town contended that it was immune from liability because the decision to remove old parking meters in a public parking lot was a discretionary function. *Id.* at 276. The Supreme Judicial Court held that "the relevant inquiry is not whether the decision to remove the parking meters constituted a discretionary function under § 10(*b*), but rather whether the maintenance of the parking lot in furtherance of this decision falls within the exemption from liability." *Ibid.* Similarly, the relevant inquiry in the present case is not whether the decision to plow and salt the streets constituted a discretionary function, but rather whether the carrying out of this decision falls within the rule.

Further, the court in *Barnett* asserted that the case would have been "similar to the *Doherty* case had the city . . . decided to remove the snow but acted negligently in its shoveling, salting, or sanding." *Barnett* v. *Lynn, supra* at 666. That is the case here. The decision to adopt and implement a policy is protected under the discretionary function rule, see *Patrazza* v. *Commonwealth*, 398 Mass. 464, 469-470 (1986), but "[t]he question whether a governmental actor's conduct involves discretion of the planning or policy-making type must be narrowly focused on the allegedly negligent conduct, not on whether the actor's conduct is part of some broader governmental policy." *Horta* v. *Sullivan*, 418 Mass. 615, 621 (1994). Here, the plaintiffs claim that the defendant's employees negligently supervised Drake's operation of the salt truck. Under the case law, this conduct does not appear to have a "close nexus to policy making or planning." *Id.* at 622. Therefore, section 10(*b*) is not a bar to this action.

*Judgment affirmed.*