Tucker, Richard T., J.
This is a personal injury action brought by the plaintiffs, Norman and Sylvia Srebnick (the Srebnicks), for injuries suffered by their ward, Pamela Srebnick, arising out of an automobile accident. The Srebnicks have brought claims for negligence against the driver, Jessica Rodriguez (Rodriguez), negligent entrustment against her employer, Kiessling Transit, Inc (Kiessling), and negligent failure to supervise against Montachusett Regional Transit Authority (MART), the government agency that had contracted with Kiessling to provide transportation services. MART now moves for summary judgment on the Srebnicks’ claim, and on Rodriguez’s cross claims for indemnification and contribution. For the reasons that follow, both motions are ALLOWED.
*495 BACKGROUND
On August 9, 2005, Kiessling contracted with MART to provide transportation services in connection with MARTs 2004 agreement with the Department of Mental Retardation (DMR). The contract included an addendum entitled “Attachment A: Technical Specifications for DMR Transportation Services,” requiring Kiessling to “maintain liability insurance for bodily injuries and/or death with minimum limits of $1,500,000 for any vehicle with a seating capacity of nine (9) to fifteen (15) passengers.” However, on or about November 21, 2005, MART received a certificate of liability insurance from Albert J. Tomy & Co. (Tomy) indicating that Kiessling’s liability insurance covered only up to $1,000,000 per accident.
In November 2005 Kiessling hired Rodriguez as a driver. On January 30, 2006, Rodriguez was operating one of Kiessling’s multi-passenger vans on Route 290 in Worcester, Massachusetts, when she was involved in an accident that claimed the lives of two passengers, Robert Pugliese and David Fantasia, and which seriously injured a third, Pamela Srebnick.[1]
DISCUSSION
Standard of Review
Summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Comm’cns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving parly establishes the absence of a triable issue, the parly opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, 404 Mass. at 17. “(T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. Srebnick vs. MART
The Srebnicks’ claim against MART is based on MARTs failure “to adequately supervise and monitor Kiessling Transit, Inc. and to ensure compliance with all applicable Department of Mental Retardation regulations including but not limited to the requirement that Kiessling Transit, Inc. maintain 1.5 million dollars in motor vehicle liability insurance.”
This court has already determined that MART is a “public employer” within the meaning of the Massachusetts Tort Claims Act, G.L.c. 258, §1 et seq. [26 Mass. L. Rptr. 48.) MART now argues that it is immune from liability under sections 10(b) (the “discretionary function” exemption) and 10(j) (“original cause” exemption) of the Act.[2]
A. The “Discretionary Function” Exemption, G.L.c. 258, § 10(b)
The “discretionary function” exemption immunizes a public employer from liability for “any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employee, acting within the scope of his office or employment, whether or not the discretion is abused." G.L.c. 258, §10(b).
To determine whether the discretionary function rule applies, courts use a two-step analysis. Chiao-Yun Ku v. Town of Framingham, 62 Mass.App.Ct. 271, 276 (2004). “The first step is to determine whether the defendant had any discretion at all as to what course to follow. If the defendant had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, then the discretionary function rule does not apply.” Id. Even if this hurdle is overcome, the discretionary function rule will not apply unless “the conduct that caused the injury has a high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, as opposed to conduct that consists of the carrying out of established policies or plans.” Id. at 277.
To the extent the Srebnicks’ claim is based on MARTs failure to ensure that Kiessling carried a minimum of liability insurance coverage, that claim would not appear to be barred by the discretionary function rule. In this case, the DMR had an established policy of requiring that its independent contractors carry a specified minimum liability coverage. This policy was explicitly set out in the Addendum to the contract between MART and Kiessling. Because MARTs ability to be a broker between the DMR and independent contractors like Kiessling required it to place the DMR’s regulations in its contracts, MART had no choice but to insist on this condition.
The more interesting question is whether, by the mere insistence that Kiessling agree to this condition, MART fulfilled any duty it may have had to Kiessling’s customers, or whether MART had a further duty to police this requirement whenever and wherever a breach appeared to occur. The court will address this question below, but for the moment points out that, to the extent the Srebnicks wish to impose liability on MART for Kiessling’s inadequate insurance coverage, their claim is not ripe until that inadequacy has been *496 established. In other words, even assuming MART had a continuing duty to police its agreement with Kiessling, the Srebnicks have no claim against MART until they secure a judgment against Kiessling in excess of its policy limits because, until that time, they cannot establish either causation or damages with respect to MART.
The same analysis would appear to apply where the Srebnicks’ claim is based on MART’S general failure to supervise, or a more specific failure to ensure Kiessling’s compliance with other DMR regulations. Here, again, the Srebnicks appear to claim a duly of care defined by regulations — such as those pertaining to the hiring, training and evaluation of Kiessling’s drivers — that MART had no choice but to include in its contract with Kiessling. There would therefore appear to be no discretion on MART’S part, precluding application of the rule. Nevertheless, the assumption that MART had a continuing duty to police those provisions of its contract with Kiessling, and that it was the breach of this duty that caused the Srebnicks’ ward harm, is neither explicitly stated nor defended. As is shown below, this assumption, were it adopted, would run contrary to the policy rationale of the “original cause” exemption, and would potentially impose liability on public employers far beyond what was intended by the Act.
B. The “Original Cause”
Exemption, G.L.c. 258, §10(j)
The “original cause” exemption bars suit on “any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.” G.L.c. 258, §10(j).
The Supreme Judicial Court has determined that section 10(j) “was intended to provide some substantial measure of immunity from tort liability to government employers,” and that courts “must not adopt an interpretation of the statute that construes the words ‘originally caused’ so broadly as to encompass the remotest causation and preclude immunity in nearly all circumstances.” Brum v. Town of Dartmouth, 428 Mass. 684, 695 (1999). Therefore, in order to be the “original cause” of a “condition or situation” within the meaning of section 10(j), “the act must have materially contributed to creating the specific ‘condition or situation’ that resulted in the harm.” Kent v. Commonwealth, 437 Mass. 312, 319 (2002).
MART points to Boye v. Nashoba Reg’l Sch. Dist., No. 01-3011 (Ma.Super. Sept. 10, 2002) [15 Mass. L. Rptr. 275). The facts of Boye are remarkably similar to those of the present case. In Boye, the defendant school district had contracted with Ryder to provide bus services for its students. The plaintiff was injured when one of Ryder’s employee drivers hit her with the school bus. The complaint alleged not only that the driver was driving negligently when she hit the plaintiff, but that the plaintiff had warned the school district, prior to the accident, that the driver was incompetent and posed a danger to others. Nevertheless, the court (Hely, J.) granted the school district’s motion to dismiss on the ground that the claim was barred by section 10(j):
The plaintiffs specific claim is that despite her prior warning to the school district about this particular driver, the school district failed to act to prevent the danger that the driver posed to school children and others. Under Section 10(j), as interpreted in Brum, this failure to prevent the danger, even a known danger, is statutorily exempt from liability . . . Otherwise practically eveiy failure to prevent might be recast as originally causing the dangerous condition.
Boye, supra. Contrasting the facts of Boye with those of cases where section 10(j) was held inapplicable because of some affirmative act by the public employer, Judge Hely noted that “the defendant school district in this case did not select, recommend, hire or affirmatively place the negligent bus driver. The school district may have failed to demand her discharge in response to a warning, but it did not ‘originally cause[ ]’ the ‘tortious conduct of . . . [the] third person.’ ” Id.
Now we return to the question, posed but not answered above, whether MARTs duty extended to policing every aspect of its contract with Kiessling. Boye suggests that MART’S prior knowledge of Kiessling’s failure to procure minimum coverage did not create a duty to ensure Kiessling’s compliance with the contract, just as Boye’s prior warning to the school district did not create a duty on the part of the school district to remove the driver. Thus, even if that claim were ripe, even if the Srebnicks had already secured a judgment against Kiessling in excess of Kiessling’s policy limits, section 10(j) would still bar the Srebnicks’ suit against MART.
For the same reason, MART did not have a duty to stop Kiessling from hiring an unqualified driver, or force Kiessling to fire such a driver once she was hired. Nor have the Srebnicks alleged, or produced any evidence, that Rodriguez was unqualified under the standards set forth in the Addendum, or that MART knew as much. Where MART did not “select, recommend, hire or affirmatively place” Rodriguez, and where there is no evidence MART had any prior knowledge of Rodriguez’s incompetence as a driver, MART cannot be liable for injuries caused by her negligence.
The Appeals Court’s holding in Chiao-Yun Ku, supra, does not alter this analysis. In that case, the plaintiff was injured in a collision with a snow plow driven by an employee of an independent contractor hired by the Town of Framingham. The Appeals Court held that section 10(j) did not bar the plaintiffs suit against the Town. Where the Town and its employees *497 had directly supervised the salting and plowing of its streets, and where the supervision the Town provided was identical as between its own employees and its independent contractors, the Court held that the plaintiff could proceed under a theory of “retained control.” Chiao-Yun Ku, 62 Mass.App.Ct. at 274-75.
Here there is no allegation, nor any evidence, of affirmative acts of control by MART over Kiessling’s day-to-day activities, beyond the standards set forth in the Addendum. Yet the DMR’s promulgation of those standards is itself a discretionary function. Thus, for the Srebnicks to steer a safe course between sections 10(b) and 10(j), they would have to show more than the mere existence of such standards, and more than MARTs failure to step in when one of its independent contractors did not abide by those standards. They would have to show that MART had “retained control” over Kiessling’s compliance through some affirmative act or acts, and that in doing so MART had failed to act reasonably, thus causing Pamela Srebnick harm. On the record before the court there is no evidence of such retained control, nor of any causal link between the act or acts of control and the harm that befell Ms. Srebnick. Therefore, the Srebnicks’ claim against MART is barred by the “original cause” exemption.
II. Rodriguez vs. MART
Rodriguez has asserted cross claims against MART for contractual indemnification, common-law indemnification, and contribution pursuant to G.L.c. 23IB. However, Rodriguez has offered no evidence that there was ever a contract between herself and MART whereby MART assumed an obligation to indemnify Rodriguez against her own negligence. See Rathburn v. Massachusetts Elec. Co., 395 Mass. 361, 363 (1985) (stating general rule that there must be express language creating obligation to indemnify). Nor is Rodriguez entitled to common-law indemnification. Such a claim lies only where one in Rodriguez’s shoes is exposed to vicarious liability because of the negligence of another. Decker v. Black & Decker Mfg. Co., Lenox Machine Co., 389 Mass. 35, 40 (1983). Here, however, Rodriguez’s liability, if she ultimately has any, will be based on her own negligent driving, and will not be derivative of any tortious conduct by MART.
Finally, Rodriguez is not entitled to contribution under G.L.c. 23 IB. “Contribution claims are derivative and not new causes of action. Without liability in tort there is no right of contribution.” Berube v. Northampton, 413 Mass. 635, 638 (1992). Here, none of the plaintiffs’ claims against MART have survived summary judgment. As such, MART cannot be found liable for any of their injuries, and therefore cannot be “jointly liable” with Rodriguez for those injuries. Therefore, MART is entitled to summary judgment on Rodriguez’s cross claims.
ORDER
For the foregoing reasons, MARTs Motion for Summary Judgment as to Plaintiffs Srebnick is ALLOWED. MART’S Motion for Summary Judgment as to Co-Defendant Rodriguez is ALLOWED.

 Representatives of the estates of Messrs. Pugliese and Fantasia also brought claims against Rodriguez, Kiessling and MART for negligence, negligent entmstment and negligent failure to supervise, respectively. By an Order dated June 30, 2009, this court (Tucker, J.) granted MARTs motions for summary judgment on their claims [26 Mass. L. Rptr. 48]. The court also granted summary judgment in MART’S favor on Kiessling’s cross claims for indemnification and contribution, and on MARTs own cross claim for indemnification.

The Srebnicks have not filed an opposition. The only opposition appears to come from Tonry.