IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SABRA A. HORVAT,  :
    Plaintiff  :
      :  C.A. No.: S16C-03-003 RFS
v.  :
      :
STATE OF DELAWARE OFFICE  :
OF MANAGEMENT & BUDGET, *et al.*,  :
    Defendants.  :

## **MEMORANDUM OPINION**

Upon Defendants' Motion for Summary Judgment.  Granted.

Date Submitted:  August 30, 2017
Date Decided:  October 30, 2017

William D. Flethcher, Esq., Schmittinger & Rodriguez, P.A., 414 S. State Street, P.O. Box 497, Dover, Delaware 19903, Attorney for Plaintiff

Joseph C. Handlon, Esq., Lynn A. Kelly, Esq., Deputy Attorneys General, Carvel State Office Building, 820 N. French Street, Wilmington, Delaware 19801, Attorneys for Defendants

STOKES, J.

## I.    INTRODUCTION

This matter is presently before the Court on the motion of the Defendants, the State of Delaware Office of Management and Budget, *et al.*("Defendants" or "the State"), for summary judgment. The Plaintiff, Sabra A. Horvat ("Plaintiff" or "Horvat"), opposes the Motion. For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**.

## II.    FACTS

On March 4, 2014, Horvat reported for jury duty at the Kent County Courthouse. She parked in the Kent County Courthouse Parking Lot on Water Street in Dover. This parking lot had been specified in the jury summons as one of the three areas available to the jury pool for parking. On March 3, 2014, the Dover area had experienced freezing rain and heavy snowfall, which accumulated to around seven inches of snow. By the time Plaintiff parked in the parking lot, it had been cleared. However, some icy patches remained. As Plaintiff walked from her vehicle to the Courthouse, she slipped and fell on a patch of ice and snow located at the entrance of the parking lot. Consequently, Plaintiff sustained serious fractures to her lower left extremity. She underwent two separate surgical procedures to repair her injuries, but she is left with a moderate permanent impairment of her injured leg. Plaintiff's medical expenses exceed $84,902.44.

## III.    PARTIES' CONTENTIONS

The parties agree that the State of Delaware adheres to the following direction: "Personnel shall perform all necessary tasks to ensure that the assigned areas are clear of snow and ice in a timely manner." They also agree that this work is performed by insured vehicles that plow the snow and salt the pavement after the snow has been cleared. When the task is completed, the pavement should be clear of all snow and ice. It is further undisputed that there was an icy patch remaining in the Kent County Courthouse Parking Lot after the clearing duties had been

2

completed, and that this hazard was the cause of Horvat's fall and injuries. However, the parties disagree as to whether Defendants can be held liable for this failure as well as Plaintiff's resulting injuries. The States advances three theories under which it is immune from suit: sovereign immunity, the public duty doctrine, and the State Tort Claims Act.

*A. Sovereign Immunity*

Under the doctrine of sovereign immunity, the State cannot be sued without its consent.[1] According to 18 *Del. C.* § 6511, "The defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the state insurance coverage program, whether same be covered by commercially procured insurance or by self-insurance...."[2] Defendants claim that, because the State of Delaware does not have insurance for this loss, it cannot be held liable for Plaintiff's injuries. Plaintiff claims that the State's automobile insurance policy covers the loss, thereby waiving immunity. The insurance policy in question reads in pertinent part: "We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which insurance applies, *caused by an auto accident and resulting from the ownership, maintenance or use of a covered vehicle.*"[3] While Defendants do acknowledge there is an insurance policy, they argue that it would only cover losses incurred directly from the *use* of the insured vehicle, in this case the snow plow. They assert that the plow did not cause the patch of ice in the parking lot, so there is no insurance coverage. In the absence of insurance coverage, the doctrine of sovereign immunity would apply, relieving the State of any liability.

Conversely, Plaintiff asserts that the use of the snow plow caused the icy patch and her resultant injury. In her Response in Opposition to Defendants' Motion for Summary Judgment she writes, "...it is the careless and unreasonable use of a snowplow vehicle and a salt spreader

---

[1] *Zak v. GPM Investments, LLC,* 2013 WL 1859344, at *2 (Del. Super. Ct. Apr. 30, 2013).
[2] 18 *Del.C.* § 6511.
[3] Defs.' Mot. Summ. J. 2 (emphasis in original).

3

vehicle that allowed untreated snow and ice to remain on parking lot surface and that condition caused Plaintiff to slip and fall on March 4, 2014. The State's sovereign immunity defense is waived...."[4] At the crux of this issue is the following question: did the State's use of an insured snowplow to clear the parking lot constitute "use" as contemplated by the insurance policy, bringing it under the coverage of the policy and waiving sovereign immunity?

*B. Public Duty Doctrine*

In order to recover under the theory of negligence, Plaintiff would have to show, among other things, that Defendants owed her a duty of care. According to the public duty doctrine, government actors typically only owe a duty to the public at large, not to an individual person.[5] However, there are exceptions to this rule. For instance, the special relationship exception covers situations where a closer than usual relationship is found between the state actor and the injured individual. Four factors must be met to establish this exception: (1) the assumption of an affirmative duty by the state actor to act on behalf of the injured party; (2) knowledge on the part of the state actor that its action or inaction could lead to harm; (3) some form of direct contact between the state actor and the injured party; and (4) the injured party's justifiable reliance on the affirmative undertaking of the state actor.[6]

Thus, Defendants argue that when clearing the snow they were under no duty to Plaintiff beyond the duty owed to the public at large. Therefore, Defendants assert that they cannot be held liable for Plaintiff's fall and injuries. Further, Defendants assert that the special relationship exception would not apply in this case. According to the State, because the roads and parking lot were plowed for the benefit of the general public, not the Plaintiff individually, she could not

---

[4] Pl.'s Resp. Opp'n Defs.' Mot. Summ. J. 3.
[5] *Zak v. GPM Investments, LLC*, 2013 WL 1859344, at *5 (Del. Super. Ct. Apr. 30, 2013).
[6] *Id.*

4

have relied on the undertaking by Defendants. Thus, there was no special relationship between the State and Horvat.

On the other hand, Plaintiff argues that "All landowners/possessors have a duty of care owed their invitees to maintain their property in a safe condition…," which includes the duty to remove snow and ice from a parking lot.[7] This duty does "not change simply because the landowner in question is a governmental entity rather than a private person or entity."[8] Additionally, Horvat points out that the Kent County Courthouse Parking Lot was not open to the general public, but only open to those visiting the Courthouse.

Moreover, Horvat argues that the special relationship exception would apply here. She argues that, because she was compelled to appear at the Kent County Courthouse for jury duty and because the Kent County Courthouse Parking Lot was specifically identified in the summons as an available place to park, the State undertook an affirmative duty to make this area safe. Additionally, she claims the jury summons and juror call-in telephone line constituted direct contact between the State and herself, which allowed her to justifiably rely on Defendants' clearing of the parking lot. The State counters by arguing that the parking lot had not been "designated" for Plaintiff's use. The jury summons listed several available parking areas, including other parking lots and surrounding street parking. According to the State, it was only executing its duty to provide juries for criminal and civil trials.

*C. State Tort Claims Act*

The State Tort Claims Act ("STCA") "immunizes the state, its agencies, and employees from claims of negligence unless Plaintiff can show one of the following: (1) performance of a

---

[7] *Id.*
[8] *Id.*

ministerial duty; (2) gross negligence; or (3) bad faith."[9] According to Defendants, Plaintiff cannot show any of the above circumstances. However, Horvat contends that plowing the parking lot was a ministerial duty; therefore, the STCA does not insulate Defendants from liability. She claims that, "Some Delaware Courts have held conduct is more likely ministerial when there are hard and fast rules as to the course of conduct or where a person performs in a prescribed manner without regard to his own judgment concerning the act to be done."[10] Here, Plaintiff contends that there is no room for the employee(s) clearing the area to exercise discretion, and the method of removal, *i.e.*, State-owned snowplows and salting vehicles, is already specified, so the snow clearing is a ministerial act.

In response, Defendants cite Minnesota case law holding that a snowplow operator must "assess the existing conditions and rely on [their] judgment to determine the best time and manner for plowing. These decisions involve sufficient discretion to fall within that protection of official immunity."[11] Defendants note that the cited case dealt with street plowing, not parking lot plowing, but they see no consequential distinction. Thus, they believe that snow clearing must be considered discretionary rather than ministerial, and that the STCA would insulate the State from liability.

## IV. STANDARD OF REVIEW

The Court may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."[12] The moving party bears the initial burden of showing no material issues of

---

[9] Defs.' Mot. Summ. J. 5.
[10] Pl.'s Resp. Opp'n Defs.' Mot Summ. J. 3-4 (internal citations omitted).
[11] Defs.' Reply Supp. Mot. Summ. J. 6.
[12] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

fact are present.[13]  If the moving party properly supports their motion, the burden then shifts to the non-moving party to rebut the contention that no material issues of fact exist.[14]  In considering a motion for summary judgment, the Court must review the record in a light most favorable to the non-moving party.[15]  The Delaware Supreme Court illustrates the parameters of granting summary judgment as follows:

> Under no circumstances, however, will summary judgment be granted when, from the evidence produced, there is a reasonable indication that a material fact is in dispute.  Nor will summary judgment be granted if, upon an examination of all the facts, it seems desirable to inquire thoroughly into them in order to clarify the application of the law to the circumstances.[16]

## V.     ANALYSIS

*A. Sovereign Immunity*

Here, the central question is whether the State had insurance coverage for the harm caused. This question only can be answered in the affirmative if the injury was caused by the maintenance, ownership, or use of the snowplow in question, as such circumstances would have brought Plaintiff's injury within the scope of the automobile insurance policy.  The facts do not support the contention that the use of the snowplow caused Plaintiff's injuries.  Therefore, Plaintiff is precluded from bringing her claim.

The case *Zak v. GPM Investments, LLC* contains a similar fact pattern, but can be distinguished by a key fact.  In *Zak*, a driver was struck and killed by another driver as she pulled out of a convenience store parking lot.[17]  Three tall snow mounds had been piled in the shoulder which obstructed the view of the decedent-driver, causing her to pull out in front of oncoming

---

[13] *Id.* at 681.

[14] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992).

[15] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).

[16] *Id.* at 468.

[17] *Zak v. GPM Investments, LLC*, 2013 WL 1859344, at *1 (Del. Super. Ct. Apr. 30, 2013).

7

traffic.[18] A DelDOT snowplow had been used to clear the roads and caused the accumulation of snow in the shoulder.[19] Therefore, decedent's estate sought to sue the State for negligently clearing the snow and obstructing the decedent's view of traffic, which led to her deadly accident.[20] The same insurance coverage issue was addressed; the insurance policy analyzed in *Zak* contained the same language as the policy in the case at bar.[21]

The *Zak* Court found that the "use" of the snowplow could have contributed to the decedent's accident, at least in part. The Court wrote,

> Here, when viewing the facts in the light most favorable to the non-moving parties (*i.e.,* the plaintiffs), I find that the accident may have been at least partially caused by the "use" of the DelDOT snowplow. This is so, because the DelDOT vehicle caused the snow to pile into three mounds that were between 30 and 60 inches in height near the exit of the gas station. Arguably, the snow mounds impaired the decedent's line of sight, and thus, potentially contributed to the cause of the accident. Because the DelDOT snowplow "allegedly produce[d] or was the instrument of the harm" and the plaintiffs' injuries resulted from the "use" of that vehicle, I find that the plaintiffs have shown that sovereign immunity has been waived by the State in this case.[22]

In the instant case, there is no similar showing that the "use" of the snowplow caused Plaintiff to slip and fall. A distinction can be drawn here between the affirmative role that the *Zak* snowplow played in causing view-obstructing snow mounds and the role that the snowplow here played in failing to completely remove a patch of ice from the parking lot. In *Zak*, it was the action of the snowplow driver (use of the vehicle) that created the dangerous situation. Whereas here, it was merely the failure of the snowplow driver to fully clear the parking lot, not the usage of the snowplow itself. Therefore, the assertion that the "use" of the snowplow caused

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.* at *2.

Plaintiff's injuries is untenable. As a result, the automobile insurance policy does not cover this incident, so sovereign immunity is not waived. Horvat is precluded from bringing her claim.

### B. *Public Duty Doctrine*

In order to prevail in a negligence action, the Plaintiff must show that (1) she was owed a duty of care by the State, (2) that duty was breached, (3) the breach proximately caused her injury, and (4) she sustained damage as a result. Defendants contend that they only owe a duty to the general public, not to the Plaintiff individually.[23] The State relies on the public duty doctrine to arrive at this conclusion. According to the Court in *Zak*,

> That doctrine holds that where government action is involved, the duty that is claimed to be owed to the injured party by a governmental agency or its agents runs to the public at large and not to the specific individual. The public duty doctrine, however, is inapplicable when there is a "special relationship" between the governmental agency or its agents and the injured individual. Such a special relationship exists when there is:
> (1) an assumption by the governmental agency or its agents, through promises or actions, of an affirmative duty to act on behalf of the party who was injured;
> (2) knowledge on the part of the governmental agency or its agents that inaction could lead to harm;
> (3) some form of direct contact between the governmental agency or its agents and the injured party; and
> (4) that party's justifiable reliance on the affirmative undertaking of the governmental agency or its agents.[24]

The special relationship exception does not apply in this case, so the State only owes a duty to the general public, not Plaintiff individually. Consequently, Plaintiff cannot recover.

Plaintiff cannot demonstrate that the four elements of the special relationship exception are met. First, Defendants did not assume a duty for the benefit of Plaintiff individually. The State directs that "Personnel shall perform all necessary tasks to ensure that the assigned areas are clear of snow and ice in a timely manner." This is similar to the direction at issue in *Zak*. In that

---

[23] *Id.* at *5.
[24] *Id.* at *5.

case the plaintiff relied on 17 *Del. C.* § 132(b)(2) to establish a duty running from the State to the decedent. Section 132(b)(2) states that DelDOT must "maintain all state highways under its jurisdiction."[25] There is no mention of a duty running from the State to the Plaintiff *individually* in either provision. Therefore, both in *Zak* and the case at bar, it must be concluded that Defendants were only acting on behalf of the general public when clearing the snow and ice.

The fact that the Kent County Courthouse Parking Lot was designated for those having court business makes this a closer case, but still does not support the contention that the State had assumed a duty to benefit Plaintiff. The parking lot was not specifically assigned to Horvat or to the jury pool generally. As previously mentioned, the parking lot was open to all people conducting business at the Kent County Courthouse. Thus, no assertions have been made supporting the idea that the State assumed a duty to clear the parking lot specifically for Plaintiff. In short, Horvat cannot claim that the first element of the special relationship exception is met.

Furthermore, Plaintiff fails when arguing there was direct contact between her and the State. The jury summons and juror call-in line are not sufficient to establish direct contact. *Jackson v. Minner* is informative. In *Jackson*, the Court contrasted the relationship between a prison inmate and correctional officers and a prison inmate and the correctional officers' supervisors.[26] An inmate who was injured when he fell when entering a prison van brought suit against the corrections officers who had been present at the time of his fall and had ignored his requests for help into the van immediately before falling.[27] The Court explained that, "…it is undisputed that defendant correctional officers had direct contact with the plaintiff during the incident, because they escorted him to the prison van and they were standing only several feet away from him

---

[25] *Id.* at *6.
[26] *Jackson v. Minner*, 2013 WL 871784, at *1 (Del. Super. Ct. Mar. 1, 2013).
[27] *Id.* at *4.

10

when he fell."[28] The inmate also alleged that the correctional officers' supervisors were negligent in enforcing written safety regulations and training, supervising, and monitoring the correctional officers tasked with transporting the inmate.[29] However, the Court did not find that the supervisors had direct contact with the inmate, stating, "The plaintiff does not allege, and the record does not show...that [the supervisors] had direct contact with him at the time of the plaintiff's fall from the prison van."[30]

From the *Jackson* Court's holding it can be inferred that the "direct contact" prong of this analysis is to be interpreted narrowly. Since the Court found it appropriate to draw a distinction between the correctional officers and their supervisors, it appears that only those having personal interaction with the individual member of the public can be said to have had "direct contact." A mere relationship or connectedness between the individual and the state actor, such as was present between the inmate and the supervisors, is insufficient. A relationship more analogous to the contact between the inmate and the correctional officers would be the way to establish direct contact. The Court does not wish to set out a bright line rule delineating the boundary between direct contact and contact insufficient to satisfy the special relationship exception. That being said, it is clear that the contact between Horvat and the State, *i.e.* the jury summons and the juror call-in line, is more analogous to the tangential contact between the inmate and the supervisors, and is not direct enough to satisfy this element of the analysis.

Additionally, Plaintiff has not offered sufficient evidence to show that the State was aware that its inaction could potentially harm this individual or that Plaintiff was justifiably relying on its assumption of this duty. The special relationship exception does not apply. The public duty

---

[28] *Id.*
[29] *Id.* at *5.
[30] *Id.*

11

doctrine stands; the State did not owe Horvat any duty of care beyond that which it owed the general public.

### C. State Tort Claims Act

The question at issue is whether the plowing of the Kent County Courthouse Parking Lot was a discretionary or ministerial function. According to the STCA, as discussed in the previous section, if the snow plow driver used discretion when plowing the parking lot, the State is excused from liability. However, if clearing the snow was merely a ministerial function, the State bears responsibility for the snowplow driver's mistake. The Court in *Jackson* defined the terms "discretionary" and "ministerial." "Discretionary acts are those that require some determination or implementation which allows for a choice of methods, or stated differently, those acts where there are no hard and fast rules as to a course of conduct that one must or must not take."[31] Conversely, "Ministerial acts are those which a person performs in a prescribed manner without regard to his own judgment concerning the act to be done."[32] The key distinction is whether the actor exercised his or her own judgment.

The case *Sussex County v. Morris* considers whether a Sussex County Constable's act of driving a mental health patient from Milford Memorial Hospital to the State Hospital was `discretionary or ministerial.[33] The Court wrote:

> The immunity granted to discretionary acts does not extend to every circumstance in which some element of choice is involved. Were that the case, virtually every act would be considered discretionary since there are few that do not involve some element of choice...To grant immunity based solely upon the existence of a choice would run counter to logic, precedent, and the clear legislative intent underlying the Act...[W]e use "ministerial" to describe those acts which, may involve an insignificant element of choice, but which the legislature has not insulated from immunity.***Rather than attempt to explicate terms as nebulous as

---

[31] *Id.* at *6.

[32] *Id.* (internal citations omitted).

[33] This case construed the County and Municipal Tort Claims Act. The language at issue is substantially similar to that found in the State Tort Claims Act.

"discretionary" and "ministerial," we adopt the general definition of "ministerial" set forth in the Restatement (Second) of Torts. An act is ministerial if the "act of the official involves less in the way of personal decision or judgment or the matter for which judgment is required has little bearing or importance upon the validity of the act...." The distinction between discretionary and ministerial acts is always one of degree.[34]

This case helps to flush out the distinction between discretionary and ministerial acts; however, a sizable degree of discretion left to the Court when considering the facts of a particular situation.

There is little guidance in Delaware case law concerning this question. However, unsurprisingly, courts in Minnesota have dealt with the issue numerous times. A case from the Minnesota Court of Appeals, *Simmons v. Olson*, is on point. There, a snowplow driver collided with a motorist while plowing a stretch of road.[35] According to the snowplow driver, a four to five foot tall snow pile had obstructed his view of oncoming traffic.[36] The central question for the Minnesota Court to answer was whether the snowplow driver had taken discretionary or ministerial action while operating the plow. The Court wrote,

> We have recognized that snowplow drivers must "assess the [road] conditions and rely on [their] judgment to determine the appropriate speed. [They must also] assess the existing road conditions and rely on [their] judgment to determine the best time and manner for plowing. These decisions involve sufficient discretion to fall within the protection of official immunity. When actively removing snow, snowplow drivers exercise discretion.[37]

---

[34] *Sussex County v. Morris*, 610 A.2d 1354, 1358-59 (Del. 1992).

[35] *Simmons v. Olson*, 2001 WL 1530845, at *1 (Minn. Ct. App. Dec. 4, 2001).

[36] *Id.*

[37] *Id.* at *2. *See also Stanfield v. Peregoy*, 429 S.E.2d 11 (Va. 1993)(holding that the action of snowplowing is discretionary, but recognizing that if the accident had occurred while the snowplow was en route to the area to be plowed or returning from a plowing operation, the outcome may be different); *In re Alexandria Accident of February 8, 1994*, 561 N.W.2d 543 (Minn. Ct. App. 1997)(holding that, when actively removing snow, snow-removal operations are discretionary); *Igou v. Garden City Township*, 2016 WL 7337143 (Minn. Ct. App. Dec. 19, 2016)(finding that due to the snowplow driver's need for complex decision making and the balancing of several factors when operating the plow, the action was discretionary. However, the Court placed emphasis on the requirement that discretionary actions involve some exercise of judgment); *Truman v. Griese*, 762 N.W.2d 75 (S.D. 2009)("In order to find a duty 'ministerial,' we must find a 'governing rule or standard' so clear and specific that it directs the government actor without calling upon the actor to ascertain how and when to implement the rule or standard."). *But see Wulf v. City of Merrill*, 608 N.W.2d 538 (Wis. Ct. App. 1999)(stating that the parties agreed "the City's duty to clear snow from its streets is ministerial."); *Ku v. Town of Framingham*, 816 N.E.2d 170 (Mass. App. Ct. 2004)(finding there to be liability when the conduct concerned "the carrying out of established policies rather than actual policymaking and planning.").

The *Simmons* Court clearly placed snowplowing into the discretionary category.

Minnesota courts have drawn a distinction between a snowplow driver operating a plow to clear snow and operating a plow in the same manner in which any vehicle would be operated, *i.e.,* when the plow is simply being driven.[38] For example, in *Shariss v. City of Bloomington,* a snowplow driver backed up his plow in order to allow traffic to flow unimpeded. As a result, the plow collided with another motorist. The Court found this action to be ministerial.[39] The Court wrote,

> Here, Pawlak's decision to drive his snowplow in reverse was similarly ministerial because the job was simple and definite. Pawlak was stopped, waiting in a queue behind another City snowplow. He was not actively engaged in snow-removal operations when he thought that he was blocking the path of the school bus behind him. Based on "standard operating procedure," which imposed a duty to "maintain traffic flow," Pawlak decided to reverse his snowplow and begin to back up. In doing so, Pawlak had an obligation to exercise due care…denying immunity in this case does not implicate the concerns of deterring snowplow drivers from exercising their judgment when making the difficult decisions that may arise in the often hazardous activity of snow removal. But when a snowplow driver is not actively engaged in snow-removal operations and performs a discrete act that requires little or no independent judgment, he or she is obligated to exercise care.[40]

This distinction serves to ensure that the discretionary duty exception is not read too broadly.

Moreover, courts have considered how the instruction given to the snowplow operator or other state actor influences this analysis. If no clear instruction as to the manner of completion was given, then the logical conclusion is that the actor will have to use his or her reasoning and decision-making skills to complete the assignment.[41]

---

[38] *Shariss v. City of Bloomington,* 852 N.W.2d 278, 283 (Minn. Ct. App. 2014). *See also Ayers v. Kalal,* 2015 WL 9264116 (Minn. Ct. App. Dec. 21, 2015)(holding that the act at issue, driving a snowplow across a highway in order to reach area to be plowed, was ministerial because the snowplow driver was only operating the vehicle, not clearing the roadway).

[39] *Id.*

[40] *Id.*

[41] *See Connecticut Light & Power Co. v. Town of Goshen,* 2015 WL 7941567, at *4 (Conn. Super. Ct. Nov. 12, 2015); *Kelley v. Jerde,* 2007 WL 1531878, at *4 (Minn. Ct. App. May 29, 2007).

14

Now, the Court turns to the applications of law to the facts of this case. Here, it is clear that the state employee charged with clearing snow from the Kent County Courthouse Parking Lot was taking discretionary action. Determining when and how to plow the area as well as considering whether appropriate paths and walkways had been made throughout the parking lot for pedestrian crossing demonstrates the level of decision making and personal judgment necessary to elevate these actions to the discretionary category. Operating a snowplow requires more than the mere element of choice, as referenced in *Morris*. The types of decisions involved with operating a snowplow are complex enough to merit the discretionary classification. Holding such does not construe the definition too broadly, as cautioned in *Morris* and *Shariss*.

Additionally, it is impossible for Plaintiff's harm to have been caused while the snowplow was being operated as an ordinary vehicle. Horvat takes issue with the methods used when clearing the parking lot, not the particular manner in which the plow was used.

Finally, the lack of detail provided in the state directive concerning snow clearing supports the finding that this action is discretionary. The applicable policy states: "Personnel shall perform all necessary tasks to ensure that the assigned areas are clear of snow and ice in a timely manner." The policy does not dictate how the assigned areas will be cleared in a timely manner. Therefore, it follows that those tasked with the assignment may exercise their judgment to determine how best to complete his or her duties.

Considering the foregoing, it is clear that plowing the Kent County Courthouse Parking Lot was a discretionary action; therefore, Defendants are immune from suit under the STCA.[42]

---

[42] The Court notes that even if the act of plowing the parking lot was found to be ministerial, sovereign immunity and the public duty doctrine would still bar the suit from going forward. *Hales v. English*, 2014 WL 12059005, at *3 (Del. Super. Ct. Aug. 6, 2014).

## VI. CONCLUSION

Given that Defendants are shielded from liability for Plaintiff's injuries by sovereign immunity, the public duty doctrine, and the STCA, the Court finds that there are no issues of material fact. Defendants are entitled to summary judgment as a matter of law; Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**